IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

FRANCISCO JAVIER VALDEZ-RUIZ,

    Petitioner,

v.

                                          Civil Case 2:24-CV-137-Z
                                          (Criminal Case 2:21-CR-97-Z-BR-3)

UNITED STATES OF AMERICA,

    Respondent.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Francisco Javier Valdez-Ruiz ("Valdez-Ruiz") filed a motion to vacate, set aside, or correct sentence ("Motion") under 28 U.S.C. Section 2255 by a person in federal custody. ECF No. 9. Having considered the Motion, the response and the reply thereto, the record, and applicable authorities, the Court hereby **DENIES** the Motion for the reasons stated below.

### BACKGROUND

The record in Valdez-Ruiz's underlying criminal case, No. 2:21-CR-97-Z-BR-3 (the "CR"), shows the following:

On October 11, 2022, Valdez-Ruiz pleaded guilty to one count of Distribution and Possession With Intent to Distribute Fentanyl and Aiding and Abetting, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. Section 2. CR ECF Nos. 149, 165. After Valdez-Ruiz's guilty plea, the probation officer prepared a presentence report ("PSR"), showing that Valdez-Ruiz's criminal history was Category I and his base offense level was 38. CR ECF No. 185-1 ¶¶ 38, 52. After increases for special offense characteristics and reductions for acceptance of responsibility, his total offense level was 37 and his sentencing

guideline range was 210 to 240 months. *Id.* ¶¶ 39-47, 72. On February 22, 2023, the Court sentenced Valdez-Ruiz to a term of imprisonment of 240 months, followed by three years of supervised release. CR ECF No. 205. Valdez-Ruiz filed a direct appeal, which was dismissed by the Fifth Circuit Court of Appeals as frivolous on February 15, 2024. CR ECF No. 235.

On June 19, 2024, Valdez-Ruiz timely filed this motion to vacate.[1] Because the motion was oversized and violated Local Rule 7.2, the Court, upon motion of the government, ordered Valdez-Ruiz to re-plead in compliance with the rule. ECF No. 8. Valdez-Ruiz filed an amended motion, alleging that his trial counsel was ineffective for:

(1) not having sufficient experience in criminal law and being an "injury attorney";

(2) prejudicing the underlying proceedings by misunderstanding relevant case law and failing to lodge objections;

(3) failing to object to the government's alleged breach of the plea agreement by introducing information relating to a June 2020 drug sale in Arizona;

(4) failing to address and rectify the language barrier between attorney and client;

(5) failure to object to the Court's tentative determination of Valdez-Ruiz's sentence;

(6) failing to adequately prepare and "present a cogent argument";

(7) failing to address prosecutors' alleged racial bias against Valdez-Ruiz;

(8) failing to object to "documents and undisclosed evidence";

(9) misunderstanding relevant case law and, consequently, arguing at sentencing in such a way as to allow the government to introduce additional "unfair" evidence; and

(10) failing to argue "the standalone nature" of the Arizona drug sale.

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's federal habeas corpus petition is deemed filed when the prisoner delivers it to prison officials according to the proper prison procedures." *Starns v. Andrews*, 524 F.3d 612, 616 n.1 (5th Cir. 2008).

2

ECF No. 10 at 10-23. The government responded, alleging that Valdez-Ruiz's requests for relief are meritless and should be denied. ECF No. 12. Valdez-Ruiz filed a reply, disputing the government's claims. ECF No. 15.

**STANDARD OF REVIEW**

After conviction and exhaustion or waiver of a defendant's right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164–65 (1982); *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (same). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the errors. *Id.* at 232.

Section 2255 does not offer recourse to all who suffer trial errors. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Section 2255 is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517–18 (5th Cir. 1978)).

Section 2255 motions do not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section

2255 Proceedings. "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Hughes*, 635 F.2d at 451. A prisoner is not entitled to an evidentiary hearing unless he or she "presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). The Court has reviewed the record and concluded that an evidentiary hearing is not necessary because the record categorically refutes Valdez-Ruiz's claims, as set forth below.

### ANALYSIS

Valdez-Ruiz alleges that his counsel was ineffective. To prevail on an ineffective assistance of counsel claim, a movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) ("Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel."). Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The likelihood of a different result "must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170,

189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the movant must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

### I. Issues Related to Arizona Drug Sale (Grounds Two, Three, Five, Six, Eight Nine and Ten)

The bulk of Valdez-Ruiz's claims arise from the Court's determination at sentencing that he was not entitled to application of the "safety valve" provision of the United States Sentencing Guidelines ("USSG"). USSG Section 5C1.2 provides that, for convictions of certain drug offenses, "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" if the defendant meets certain requirements. One such requirement is that the defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id.* at subsection 5. The salient question at sentencing herein was whether a previous Arizona drug sale constituted "the same course of conduct" or "common scheme or plan" such that Valdez-Ruiz was required to fully debrief about it in order to be entitled to safety-valve relief.

Valdez-Ruiz complains that his counsel was ineffective because counsel failed to convince the Court that a 2020 drug sale in Arizona was not part of the same course of conduct as this case. Specifically, he alleges that: (1) counsel argued the applicability of *U.S. v. Miller*, 179 F.3d 961 (5th Cir. 1999), which led to the government improperly "marshalling additional evidence" regarding the Arizona drug sale, and to which Valdez-Ruiz's counsel did not object (Ground Two); (2) the government breached his plea agreement by mentioning the Arizona drug sale at sentencing (Ground Three); (3) counsel failed to object to the Court's tentative

5

determination of the sentencing range (Ground Five); (4) counsel "failed to present a cogent argument" on the inapplicability of the Arizona drug sale (Ground Six); (5) counsel provided a "misleading picture of the [Arizona] situation" and failed to argue relevant law other than *Miller* to support the argument that the Arizona drug sale was unrelated (Ground Eight); (6) counsel showed "an unsatisfactory understanding of relevant case law" such as *Miller* (Ground Nine); and (7) counsel failed to "argue the standalone nature of the Arizona incident and its irrelevance to the Texas sentencing process" (Ground Ten). ECF No. 10.

### A. The Arizona Drug Sale

In June 2020, Valdez-Ruiz arranged to deliver 9,500 Oxycodone pills in exchange for $25,000.00 to an Arizona purchaser who, unbeknownst to Valdez-Ruiz, was an undercover agent. CR ECF Nos. 190-1 and 190-2. The purchase occurred under surveillance by law enforcement and subsequently was memorialized in a police report. *Id*. However, Valdez-Ruiz was not arrested at that time. *Id*. As the government noted, the transaction occurred at the height of the COVID-19 pandemic, which hampered the Arizona federal courts and the speed of their indictment procedures. CR ECF No. 225 at 22.

Valdez-Ruiz was indicted in the instant case in November 2021. The U.S. District Court for the District of Arizona was "days away" from indicting Valdez-Ruiz in connection with the Arizona sale. *Id*. at 19. Ultimately, the District of Arizona sent a letter of non-prosecution, stating it would not prosecute Valdez-Ruiz in connection with the Arizona drug sale. CR No. 225 at 19.

### B. The Arizona Sale As a Separate Offense

The seven interrelated grounds for relief urged by Valdez-Ruiz can be condensed into one: Valdez-Ruiz complains that counsel was deficient because he failed to convince the Court that the Arizona drug sale was unrelated to the facts giving rise to the conviction herein.

Contrary to Valdez-Ruiz's allegations, however, his counsel clearly, repeatedly and competently argued that the Arizona drug sale was not a part of the same course of conduct, and that Valdez-Ruiz should not have been required to fully debrief about it to earn a safety-valve application. Valdez-Ruiz apparently believes that his counsel opened the door to discussions about the Arizona drug sale because he argued the applicability of *Miller* at the sentencing hearing. *See* ECF 10 at 13. This is not the case.

The PSR, filed on November 30, 2022, states that the government believed that Valdez-Ruiz was not entitled to a safety-valve reduction because he had "not truthfully provided to the Government all information and evidence the defendant had concerning the offense or offences that were part of the same course of conduct or of a common scheme or plan." *See* ECF No. 185-1 at ¶ 32. Consequently, Valdez-Ruiz's counsel filed a written objection to the PSR, alleging that Valdez-Ruiz "has provided all information known to him about the criminal conduct alleged" and thus was entitled to application of the safety valve. ECF No. 189 at 3. In response, the government specifically alleged that Valdez-Ruiz had not provided information about either the Arizona drug sale or this case. ECF No. 190 at 8. Probation then filed a PSR Addendum, noting that it was unaware of the Arizona drug sale at the time the PSR was created, but updated the PSR to reflect the Arizona drug sale at Paragraph No. 55. *See* ECF 191-1 at 2-3. Therefore, the issue of whether the Arizona drug sale constituted the "same course of conduct or of a common scheme or plan" was at issue both before and during the sentencing hearing.[2]

At the sentencing hearing, Valdez-Ruiz's counsel argued the applicability of *Miller*, in which the U.S. Court of Appeals for the Fifth Circuit discussed factors to consider in

---

[2] Nowhere does Valdez-Ruiz's plea agreement restrict the government's mention of the Arizona drug sale, as Valdez-Ruiz erroneously contends in Ground Three of his motion. *See* CR ECF No. 140.

determining whether previous criminal conduct was part of the "same course of conduct or of a common scheme or plan" such that the safety valve should apply. *See* USSG Section 5C1.2; *Miller*, 179 F.3d at 964. In *Miller*, the Fifth Circuit vacated a sentence due to the trial court's erroneous determination that a previous criminal conviction was part of a "common scheme or plan." *Id* at 969.

After the Court announced its tentative determination to deny Valdez-Ruiz's motion for a downward variance based on the safety valve, Valdez-Ruiz's counsel accepted the Court's invitation to refute its tentative finding. CR ECF No. 225 at 5, 8, 16-18. Noting that the Court had, in part, relied on the Arizona drug sale in tentatively deciding to not apply the safety valve, defense counsel pointed to the non-prosecution letter from the District of Arizona as evidence that the Arizona incident "was a separate offense and not associated with the offense that is charged in this case," which occurred 15 months later. *Id.* at 17. Defense counsel then discussed *Miller*, which rejected the government's contention therein that the prior drug activity constituted the same course of conduct for purposes of debriefing and held that the defendant was eligible for the safety valve.[3] *Id.* at 17–18.

Although the Court was unpersuaded by defense counsel's argument, the Court noted that counsel had "capably and effectively argued the 5C1.2 Safety Valve adjustment." *Id.* at 24. The Court further added, "[t]hat the Court disagreed, mostly for factual reasons, does not mean the Court did not benefit from excellent briefing from Defendant." *Id.* The record undisputedly shows that the Court did not deny Valdez-Ruiz the safety valve because of

---

[3] Valdez-Ruiz argues that, simply because the Arizona drug sale occurred more than one year before the conduct at issue in this case, it is *per se* not to be considered part of a common scheme, and counsel was ineffective in failing to convince the Court of his position. ECF No. 10 at 5-7. However, as the Court noted at sentencing, the one-year cutoff is seen as a benchmark, not a bright line rule. *See* CR ECF No. 225 at 21-23.

8

defense counsel's alleged subpar preparedness, deficient legal analysis or lack of a "cogent argument." Instead, the Court denied application of the safety valve due to the facts of the case. *Id.* The fact that counsel's challenges were unsuccessful does not render counsel ineffective. *See, e.g., Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) ("The fact that trial counsel was unsuccessful in his efforts does not constitute, in light of the entire record, a basis for habeas corpus relief."); *see also Jones v. United States*, No. 3:19-CV-1461, 2021 WL 5017342 (N.D. Tex. 2021) ("Habeas relief is not warranted where, as here, counsel tried but was not successful in his efforts to persuade the court."). Valdez-Ruiz's counsel capably argued for application of the safety valve throughout the sentencing hearing. That the argument ultimately proved unsuccessful does not render counsel ineffective.[4]

### C.  Valdez-Ruiz Was Not Prejudiced by the Court's Determination

Even if the Court had erred in considering the Arizona drug sale in denying application of the safety valve, Valdez-Ruiz has not shown that he was prejudiced by the Court's decision. At sentencing, the Court also based its denial of the safety valve upon its determination that Valdez-Ruiz continued to be untruthful regarding his role in the criminal conduct charged in this case. CR ECF No. 225 at 15–16. Specifically, the government contended that Valdez-Ruiz was untruthful in his initial interview, constantly changed his story, and steadfastly denied his part in loading contraband into a spare tire, despite witness testimony to the contrary. *Id.* at 16. Thus, there were separate grounds for denying the safety valve other than the Arizona drug sale.

---

[4] To the extent that Valdez-Ruiz claims that counsel failed to challenge the Court's determination that Valdez-Ruiz was not entitled to a mitigating role adjustment as merely a courier (*see* ECF No. 10 at 3), such allegation is belied by the record. Counsel challenged the Court's determination both in writing and at the sentencing hearing. *See* CR ECF No. 189 at 1-2 and CR ECF No. 225 at 14. As a result, Valdez-Ruiz is not entitled to habeas relief on this basis.

9

In addition, the Court stated explicitly at sentencing that it would have imposed "the exact same sentence" of 240 months "for the exact same reasons given during the sentencing hearing, regardless and irrespective of the applicable guidelines range." *Id.* at 37. Even if Valdez-Ruiz had prevailed on any of his objections to the PSR, including his eligibility for the safety valve or a mitigating role adjustment, the Court stated that it "would have arrived at the exact same sentence" and "would have used a variance to do so," if necessary. *Id.* As a result, Valdez-Ruiz cannot show a reasonable probability that he would have received a "significantly less harsh" sentence but for the Court's purported error in denying him the reduction. *See Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) (noting that application of an erroneous guideline range does not always satisfy the prejudice prong because "[t]he record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range"). Grounds Two, Three, Five, Six, Eight, Nine and Ten of Valdez-Ruiz's motion fail.

## II. Ground One: Attorney background

Valdez-Ruiz argues that his trial counsel practices primarily personal injury law rather than criminal law, thereby violating Valdez-Ruiz's Sixth Amendment right because counsel prejudiced the proceedings by his inexperience in criminal law. ECF No. 10 at 11. Specifically, Valdez-Ruiz argues that defense counsel was deficient by not raising an entrapment defense.[5] *Id.* at 3.

Entrapment occurs "only when the criminal conduct was 'the product of the creative activity' of law-enforcement officials." *Sherman v. United States*, 356 U.S. 369, 372 (1958)

---

[5] Valdez-Ruiz also blames counsel's purported inexperience for the alleged deficiencies in counsel's performance regarding application of the USSG safety-valve provision; however, as the Court already has held, Valdez-Ruiz has failed to show deficient performance in connection with that issue. Therefore, counsel's alleged inexperience did not negatively affect Valdez-Ruiz.

(quoting *Sorrells v. United States*, 287 U.S. 435, 441 (1932)). In this case, in contrast, law enforcement officers had a residence suspected of drug activity under surveillance when Valdez-Ruiz unexpectedly arrived. Valdez-Ruiz provides no evidence of a valid entrapment defense that counsel failed to raise due to his purported inexperience. "Counsel is not required to engage in the filing of futile motions." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam).

Counsel is not ineffective for failing to make a frivolous argument. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness[.]"); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim"). Valdez-Ruiz has not shown that counsel's purported inexperience caused a deficient performance, nor has he shown that he was prejudiced by such alleged inexperience.

### III. Ground Four: Language Barrier

Valdez-Ruiz claims that "[t]he language barrier herein comprised the counsel's ability to effectively assist Mr. Ruiz, thereby making the plea agreement void." ECF No. 10 at 16. This conclusory allegation, without either explanation or support, fails. Valdez-Ruiz provides no evidence of bias, nor has he shown that he was prejudiced by any such bias. *See Miller*, 200 F.3d at 282.

Further, the record conclusively disputes Valdez-Ruiz's claim. Under the terms of the plea agreement, Valdez-Ruiz agreed that he was "fully satisfied" with counsel's representation and that counsel had provided "satisfactory" explanations for each of the plea agreement's paragraphs. CR ECF No. 140 at 6. He also expressed his satisfaction with counsel and his representation in open court when pleading guilty. CR ECF No. 224 at 7–8,

10. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements at plea colloquy). Likewise, courts presume the regularity of court documents and accord them "great weight." *Id.* at 32 (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily or knowingly). In support of his motion, Valdez-Ruiz provides nothing more than an unsupported contradiction of his sworn testimony. "When a defendant's [Section 2255] allegations contradict his sworn testimony given at a plea hearing, we have required more than 'mere contradiction of his statements.'" *Reed*, 719 F.3d at 373 (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1985)). Valdez-Ruiz's allegation, unsupported by evidence, is insufficient to overcome his sworn statements in open court.

**IV. Ground Seven: Racial Bias**

Valdez-Ruiz claims that both the "Texas and Arizona District Attorneys demonstrated bias against the Valdez Ruiz's race and Mexican origins." ECF No. 10 at. 17. He provides no factual basis to support this allegation. Further, Valdez-Ruiz merely alleges, again without factual support or evidence, that the government was biased against him because of his race. "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam) (internal quotation and citation omitted) (declining to consider vague ineffective assistance of counsel claim); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). Valdez-Ruiz has pointed to no evidence in the record that indicates any racial prejudice against him. Valdez-Ruiz's claim is

wholly conclusory and thus does not raise a constitutional issue meriting relief. *See* CR ECF No. 140; *Miller*, 200 F.3d at 282 ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue.").

### VI. Ineffective Assistance of Appellate Counsel

To the extent Valdez-Ruiz's one-sentence reference to his appellate counsel constitutes a claim that appellate counsel was constitutionally ineffective, such claim is without merit. *See* ECF No. 10 at 9. To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348. Thus, it is possible that an ineffective assistance claim may be "based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Because Valdez-Ruiz has not shown that trial counsel was constitutionally ineffective, he has not shown a constitutional violation by appellate counsel for failing to raise these issues. *See Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal). Further, *Strickland*

prejudice "does not result from appellate counsel's failure to assert meritless claims or arguments." *Auvenshine v. Davis*, No. 4:17-CV-294, 2018 WL 2064704, at *4 (N.D. Tex. May 3, 2018). Valdez-Ruiz's claim that appellate counsel was ineffective is meritless.

For the reasons stated above, Valdez-Ruiz's motion to vacate is **DENIED with prejudice**.

**SO ORDERED.**

August 15, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE